IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| ORRILYN MAXWELL STALLWORTH, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | NO. 2:18-cv-1005-ALB-SRW |
| v. | ) |  |
|  | ) |  |
| RODNEY W. HURST, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Foshee's Motion to Dismiss (Doc. 28), Defendant Hurst's Motion to Dismiss (Doc. 29), and Defendants Harmon and McCartney's Joint Motion to Dismiss (Doc. 31). As explained below, the motions filed by Hurst, Harmon, and McCartney are due to be GRANTED. The motion filed by Foshee is due to be GRANTED IN PART and DENIED IN PART.

## **BACKGROUND**

At around 10 PM on a December night, Orrilyn Stallworth ("Plaintiff") decided to visit a convenience store in Chilton County just off the Verbena exit. Doc. 27 ¶10. When she drove back onto I-65, a police car began to follow her. *Id.* ¶12. Although she had violated no rule of the road, Stallworth was ordered to pull over. *Id.*

After pulling Stallworth over, Defendant Rodney Hurst ("Hurst"), a Sheriff's deputy with the Chilton County Sheriff's Office, was joined by Defendant Matt Foshee ("Foshee"), who was a Clanton City police officer, and an unnamed third party. *Id.* ¶14. Hurst told Stallworth that he had detected the fetid odors of alcohol and marijuana emanating from her vehicle. *Id.* ¶¶16-17. After obtaining Stallworth's consent, the officers searched her vehicle for both alcohol and marijuana but were unsuccessful in locating either. *Id.* ¶¶18-19.

Despite their unsuccessful search, Hurst informed Stallworth that he would have to arrest her. *Id.* ¶20. She was arrested for driving under the influence and taken to Chilton County Jail. *Id.* Stallworth's vehicle was towed and impounded, and she was subjected to a breath-alcohol content analysis test, which revealed no alcohol in her system, as well as a blood test. *Id.* ¶¶25-26. These procedures were put in place and enforced by Defendants Corry McCartney ("McCartney"), a corporal in the Chilton County Sheriff's office, and Kenneth Harmon ("Harmon"), a captain in the same office. Stallworth was then formally charged by Hurst with driving under the influence and booked into jail. *Id.* ¶27.

Just before trial, the State's attorney moved to dismiss the charges with prejudice and offered no explanation for this decision. *Id.* ¶31. Stallworth believes that the State dismissed the charges against her because it knew Hurst had no

probable cause for her arrest. *Id.* ¶32. She filed a civil suit against the officials involved in her arrest and requested damages.

This Court previously granted a motion to dismiss filed by Defendants McCartney and Harmon. *See* Doc. 25. Plaintiff chose to file an amended complaint, (Doc. 27), and this matter comes before the Court on various motions to dismiss filed by the officers involved.

## STANDARD

When considering a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). There are two questions a court must answer before dismissing a complaint. First, the court must ask whether there are allegations that are no more than conclusions. If there are, they are discarded. Second, the court must ask whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If there are none, the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

Plaintiff's amended complaint contains three claims. The first arises from 42 U.S.C. §1983 and alleges that she was detained without probable cause in violation of her Fourth Amendment rights. The named Defendants are Hurst, Foshee,

Harmon, McCartney, and an unknown deputy from Chilton County. The second claim alleges malicious prosecution in violation of 42 U.S.C. §1983 and it is brought against all Defendants except Foshee. The third count alleges false arrest under Alabama state law and is brought only against Foshee. All Section 1983 claims have been brought against the named individuals in both their individual and official capacities as employees of local governments or the State of Alabama. Plaintiff seeks monetary damages and other non-economic damages.

### 1. Rodney Hurst

Hurst has moved to dismiss only the claims that have been brought against him in his official capacity, and Plaintiff has conceded those claims. *See* Doc. 36. The claims against Hurst in his official capacity will therefore be dismissed. The claims against Hurst in his personal capacity remain.

### 2. Matt Foshee

Plaintiff alleges that, in violation of the federal constitution (Count 1) and state law (Count 3), Foshee actively participated in and passively failed to prevent her arrest despite knowing that Hurst had no probable cause. *See* Doc. 27 ¶¶33-38 and ¶¶42-45. Foshee argues that Plaintiff's allegations are insufficient to state claims against him and that he is immune from suit.

An officer can be held liable under both federal and state law for actively participating in an arrest that he knows is not based on probable cause. To establish Section 1983 liability for false arrest in the Eleventh Circuit, a plaintiff must allege an affirmative causal connection between the officer's acts or omissions and the alleged violation. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010). This can be accomplished by proving that the official was personally involved in the acts that resulted in the constitutional deprivation. *Id*. Similarly, making out a claim under Alabama law for false arrest and imprisonment requires an allegation that the officer directly caused the plaintiff to be arrested. *Ex parte Harris*, 216 So. 3d 1201, 1213 (Ala. 2016).

Plaintiff erroneously argues that the Eleventh Circuit has also recognized a cause of action under §1983 against law enforcement officials who passively fail to intervene in an unlawful arrest.[1] The Eleventh Circuit first discussed a cause of action along these lines in *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). The ruling in *Byrd* pertained only to excessive force, but the court wrote that, "if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional

---

[1] The Southern District of Florida has found a claim of failure to intervene in unlawful arrest to be cognizable based on cases from the Seventh Circuit, the Second Circuit, and the Southern District of New York. *See Ball v. City of Coral Gables*, No. 07-20949-CIV, 2007 WL 9706910, at *5 (S.D. Fla. Dec. 19, 2007). But this logic does not square with the Eleventh Circuit's own cases on the subject, as explained below.

violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Id.*

Subsequent Eleventh Circuit decisions have limited the cause of action in *Byrd* to excessive force cases. It is one thing to require a police officer to stop his partner from hitting someone with a baton. It is another to require that every officer on the street actively inquire as to the constitutional merits and predicate of each seizure by other officers, and then countermand seizures they believe are unreasonable. It would effectively conscript every police officer to play the role of internal affairs as well as peacekeeper.

Instead of establishing a duty to intervene in the context of unlawful arrest, the Eleventh Circuit has recognized a "negligent involvement in unlawful arrest" tort that exposes only those to liability who take part in causing unlawful arrests to occur and possess actual knowledge that there is no constitutional basis for them. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 736-737 (11th Cir. 2010) (holding that, for unlawful arrest liability under §1983, a plaintiff must show that the officer was "personally involved in the acts that resulted in the constitutional deprivation" such that "merely being present" was not enough); *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 159 F. App'x 916, 920 (11th Cir. 2005) (allowing a cause of action for failure to intervene in unlawful arrest in a situation where excessive force was used and holding that "our precedent suggests…that the duty to intervene does

not necessarily extend to every conceivable situation involving a constitutional violation"); *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) (holding that "there is no previous decision from the Supreme Court or this Circuit holding that an officer has a duty to intervene…once [he] knows another officer has fabricated a confession in a police report for a warrantless arrest").

Plaintiff cites *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) in support of the idea that an officer may be held liable for failing to stop an unlawful arrest. But, in fact, that case undermines her position. In *Wilkerson*, the Eleventh Circuit explained that its case law does "not preclude all failure to intervene claims against a present, but non-arresting, officer in false arrest cases." *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013). Plaintiff cites this statement for the proposition that her proposed cause of action exists. But what Plaintiff does not cite is the final sentence of that paragraph, where the court underscores that its precedents require for liability that an officer know an arrest is unconstitutional and participate in it. The court explained that "what is made explicit in *Jones* is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way." *Id.*

Applying this case law to the facts as alleged in the Amended Complaint, the Court concludes that Plaintiff's claims against Foshee cannot be dismissed. Plaintiff

7

has sufficiently alleged that Foshee knew there was no constitutional basis for the arrest and participated in it anyway. *See* Doc. 27 ¶¶18-20. Plaintiff alleges that Foshee knew the traffic stop was pretextual and had "determined and implicitly agreed that plaintiff would be arrested upon some as-yet-unknown criminal charge whether or not an actual basis or probable cause existed for said criminal charge." *See* Doc. 27 ¶15. Plaintiff also alleges that Hurst announced the ostensible basis for the allegedly pretextual search in Foshee's presence—that the car smelled of alcohol and marijuana[2]—and that those statements were false. *See* Doc. 27 ¶¶ 16-17. Foshee had the opportunity to determine for himself whether those statements were true or false. Finally, Plaintiff alleges that all three officers on the side of the road proceeded to "arrest [Plaintiff] for driving under the influence and transport her to the Chilton County Jail." *See* Doc. 27 ¶ 20. Although it may be difficult for Plaintiff to establish at summary judgment or trial that Foshee was aware that there was no constitutional basis for the arrest and still participated in it, Plaintiff has pleaded sufficient facts to survive a motion to dismiss as to Foshee.

---

[2] If the smell of marijuana or alcohol was actually emanating from the vehicle, a reasonable officer could conclude that probable cause existed to arrest the driver. *See United States v. Giles*, No. 1:08-CR-0093-CAP-JFK, 2008 WL 11449123, at *6 (N.D. Ga. July 17, 2008) (smell of marijuana can provide probable cause for arrest); *United States v. Reed*, No. 118CR00612KOBHNJ, 2019 WL 2710088, at *10 (N.D. Ala. May 3, 2019) (favorably citing the proposition of *Blake v. State*, 772 So.2d 1200 (Ala. Crim. App. 2000) that "the odor of burning marijuana emanating from the defendant's automobile constituted probable cause to search the defendant and his passenger and to arrest either for possession of marijuana.").

Neither party argues that the state law standards for false arrest and involvement therewith are different than federal law standards. In light of the failure of the parties to address this issue, the Court will assume without deciding that the state law cause of action is the same as the federal law cause of action. Because the Court has concluded there are sufficient allegations to state a Section 1983 claim under federal law, Foshee's motion to dismiss the state law claim is also due to be denied.

Foshee also moved to dismiss the claims against him based on immunity. As to the federal claim, Plaintiff agrees that it should be dismissed to the extent it is brought against Foshee in his official capacity. Accordingly, the federal official capacity claim is dismissed. The federal claim brought against Foshee in his personal capacity will survive because federal immunity will be abrogated as the requirements laid out by *Wilkerson* have been met.

As to the state-law claims, Plaintiff argues that both the official capacity and personal capacity claims should remain. Specifically, Plaintiff argues that Foshee is not immune as to the personal capacity claim and the City of Clanton may be vicariously liable for Foshee's actions under state law for the official capacity claim. Alabama law provides that a municipality may be held liable for the negligence of its employees but not their intentionally wrongful acts. *See* Ala. Code § 11-47-190.

Inversely, Alabama's Peace Officer Immunity statute provides that officers are not liable for negligence or carelessness, just their intentional acts. *See* Ala. Code § 6-5-338. Plaintiff has not pleaded any state-law claim based on negligence or carelessness. If she had, that claim would be barred in its entirety by Peace Officer Immunity. Instead, Plaintiff has pleaded a state-law intentional tort based on malicious and intentional conduct.

Where there is an alleged intentional tort, although there can be no municipal liability under Alabama law, personal liability is not precluded by the Peace Officer Immunity Statute. *See Ex parte City of Gadsden*, 718 So.2d 716, 721 (Ala. 1998) (finding no municipal liability for promissory fraud and that municipalities are insulated from liability for intentional torts committed by their agents); *Hollis v. City of Brighton*, 950 So. 2d 300, 305 (Ala. 2006) (holding that, "Peace-officer immunity, like State-agent immunity, does not provide immunity from liability for the commission of an intentional tort, but only for negligence in the exercise of judgment."). Accordingly, the state law claim against Foshee in his official capacity is due to be dismissed, but the state law claim against Foshee in his personal capacity remains.

### 3. Kenneth Harmon and Corry McCartney

The Court dismissed Plaintiff's initial complaint against Harmon and McCartney for failure to state a claim and gave Plaintiff an opportunity to replead. The Court can detect no substantive change between Plaintiff's allegations against Harmon and McCartney in her first complaint, which the Court dismissed, and her amended complaint, which the Court will now dismiss. Plaintiff accuses both Harmon and McCartney of participation in unlawful seizure (Count 1) and malicious prosecution (Count 2). Plaintiff attempts to make out the elements for these claims with conclusory assertions that Harmon and McCartney actively caused Hurst to violate her rights and passively failed to ameliorate the situation after they both became aware of it. *See* Doc. 27 ¶¶30(a)-(e).

In Plaintiff's first complaint she alleged that her drug and alcohol testing at the station happened at the "direction or with the consent" of the supervisors, that the decision to charge her was "ratified, condoned, and approved" by them, and finally that her incarceration was "continued" in part due to the actions of the supervisors. *See* Doc. 1 ¶¶ 23-28. This makes up the active component of Plaintiff's allegations against Harmon and McCartney. Plaintiff then goes on to allege that both men are additionally liable because "they culpably and deliberately failed or refused to review the evidence concerning the plaintiff's arrest and detention" and "culpably failed to supervise the actions of…Hurst." *Id.* ¶ 28. This is Plaintiff's allegation of passivity.

The Court's previous order dealt with these allegations in turn. The Court explained that there is no vicarious Section 1983 liability for police supervisors based on the acts of their subordinates. *See* Doc. 25 at 3 citing *Cottone v. Jenne*, 326, 326 F.3d 1352, 1360 (11th Cir. 2003). For the active allegations, Plaintiff was informed that the test for supervisory liability was a causal connection between the act and the violation based on [1] a history of widespread abuse which puts the supervisor on notice, [2] a supervisor's custom or policy that causes the deprivation of rights, or [3] facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would do so and failed to stop it. *Id.* at 3-4 citing *Cottone*, 326 F.3d at 1360. For the passive allegations, Plaintiff was informed that, "[t]here is no constitutional requirement for a supervising officer to complete a full on-scene investigation of the basis for an arrest for conduct he did not observe." *See* Doc. 25 at 4 citing *Wilkerson v. Seymour*, 736 F.3d 978, 980 (11th Cir. 2013).

In the amended complaint's recitation of the active allegations, Plaintiff was once again subjected to alcohol and blood testing at the station but this time "pursuant to standing or general orders promulgated and enforced" by Harmon and McCartney. *See* Doc. 27 ¶25-26. Plaintiff was charged with a crime, but this time with the "active and personal participation of" Harmon and McCartney. *Id.* ¶27. The paragraph relating to incarceration is identical. *Id.* ¶28. In newly added

subparagraphs 30(b)-(e), Plaintiff alleges that the two men "actively…participated, intentionally…to cause…the unlawful…arrest, charging, detention, and imprisonment" of Stallworth and "set in motion a series of acts…that resulted in the finalization of plaintiff's arrest" even though they "should have known" it was "unlawful."

Plaintiff's changes do not bring the complaint into compliance with the requirements set forth in the first dismissal. A "standing order" to test people for alcohol and drug use when they are arrested for driving under the influence is not a "custom or policy" that causes constitutional deprivation. Further, while "active and personal participation" does track the language of the test from the first dismissal, there are no accompanying factual allegations that show what the officers allegedly did to constitute such participation, rendering the general accusation conclusory. Plaintiff also fails to tell the Court how the supervisors "set in motion a series of acts." Therefore, the Court finds that Plaintiff's allegations of active deprivation are once again insufficient to support claims of either unlawful arrest or malicious prosecution.

Plaintiff's improvement on her passive allegations is even less impressive. In subparagraph 30(a), Plaintiff merely repeats her allegation that Harmon and McCartney failed to independently ascertain the evidentiary basis for her arrest.

This time, instead of "culpably and deliberately" failing to "review the evidence," they have "culpably intentionally, with gross negligence, recklessness, or deliberate indifference" failed to review "the quality and sufficiency of the evidentiary foundation." *Id.* ¶30(a). Whether the two men failed to review the evidence because of simple negligence or intentional malice is immaterial because, as the Court mentioned in its earlier order to dismiss, they have no duty to do so. Plaintiff then claims that the supervisors "acquiesced" in or "condoned" her detention, despite having "actual knowledge" that her rights had been violated and that they had a duty to withdraw her charges because the evidence known to them "did not establish probable cause for her arrest." *Id.* ¶30(d). Because Plaintiff alleges no facts that could plausibly support the inference that such knowledge existed, let alone that both men maliciously took steps to continue her prosecution despite it, the claim fails.

Although no new factual material was included in Plaintiff's brief, Plaintiff cites a multitude of federal circuit cases for the proposition that Harmon and McCartney are liable "(1) for their direct and personal participation in the alleged unconstitutional actions and (2) their deliberate failure to act that amounts to their explicit or implicit authorization, approval or acquiescence in the constitutional deprivation." *See* Doc. 37 at 13. However, neither the Court nor Harmon or McCartney has ever questioned whether law enforcement officials who are complicit in conspiracies to violate constitutional protections can be held liable for such

14

activity. They clearly can. Rather, the issue is that, despite using a number of suggestive verbs like "condoned" and "acquiesced," Plaintiff has carefully avoided alleging even one single fact that might allow the Court to attach an inference to any of them. Although the standard of pleading is a forgiving one, an assertion like "deliberate failure to act" is conclusory if the complaint does not include any kind of alleged fact that would allow an inference to support the assertion. *See Burnett v. Fulton Cty. Bd. of Educ.*, No. 1:07-CV-0300-JTC-AJB, 2007 WL 9702284, at *8 (N.D. Ga. June 20, 2007) (holding that "[d]espite the liberal pleading standard under Fed. R. Civ. P. 8, courts have routinely dismissed complaints where a plaintiff makes only conclusory allegations about a policy or custom."); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (holding that "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true.").

In summary, Plaintiff's well-plead allegations against Harmon and McCartney are as follows: because Plaintiff was arrested by officers under the nominal control of Harmon and McCartney, and because her case proceeded to the state prosecutor without any intervention, they are responsible for both her detention and prosecution. This is nothing but a claim for vicarious liability, and the law does not allow such a claim.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendant Foshee's Motion to Dismiss (Doc. 28) is **GRANTED IN PART AND DENIED IN PART**.

2. Defendant Hurst's Motion to Dismiss (Doc. 29) is **GRANTED.**

3. Defendants Harmon and McCartney's Joint Motion to Dismiss (Doc. 31) is **GRANTED.**

4. All claims against Hurst and Foshee in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

5. All claims against Harmon and McCartney in whatever capacity are **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this 8th day of October 2019.

      /s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE