IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ORRILYN MAXWELL STALLWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-1005-RAH-SRW |
| | ) | (WO) |
| RODNEY W. HURST, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This lawsuit arises from Plaintiff Orrilyn Maxwell Stallworth's ("Stallworth" or "Plaintiff") arrest and prosecution for driving under the influence.

Stallworth claims that Rodney W. Hurst[1] ("Hurst" or "Defendant"), a Chilton County Sheriff's Deputy, is liable pursuant to 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution in violation of the Fourth and Fourteenth Amendments. Now before the Court is Hurst's motion for summary judgment on all

---

[1] In Stallworth's initial Complaint filed on November 29, 2018, she also brought suit against Kenneth Harmon, Corry McCartney, and Unknown Deputy One in their individual and official capacities as Chilton County Sheriff's Deputies, and against Matt Foshee in his individual and official capacities as a City of Clanton Police Officer. (Doc. 1.) The Court previously granted a motion to dismiss filed by Defendants Harmon and McCartney, (Doc. 40), and dismissed Defendant Foshee upon the filing of a Joint Stipulation of Dismissal by the parties, (Doc. 52). The Court additionally dismissed all claims brought against Hurst in his official capacity. (Doc. 40.) The only claims that remain, therefore, are the federal claims Stallworth brings against Hurst in his individual capacity.

claims ("Motion"). (Doc. 54.) The parties have since filed evidence and briefs in support of their respective positions on the Motion, which is now ripe for review.

After carefully considering the Motion, Stallworth's response, (Doc. 59), and Hurst's reply, (Doc. 60), and for the reasons more fully set forth below, the Court finds that Defendant Hurst's Motion is due to be GRANTED.

## I.    RELEVANT FACTUAL BACKGROUND

The events giving rise to this action took place late on the evening of December 4, 2016, when Stallworth, a black female, was driving from Daleville to Birmingham, Alabama along I-65 northbound in a newly purchased car. (Doc. 27, p. 5; Doc. 53-2, pp. 12-13, 17.) Shortly after 10:00 p.m. that evening, she stopped at a Texaco gas station located off the interstate in Chilton County where she proceeded to nap in her car.[2] (Doc. 27, p. 5; Doc. 53-2, p. 13.) Hurst, who was on patrol duty, arrived at the same gas station around 11:00 p.m. to conduct a routine business check and noticed Stallworth's parked car running with the lights on. (Doc. 53-3, pp. 10-12.) Stallworth claims Hurst was in a position to see that she was a black female, (Doc. 27, pp. 5-6), but Hurst disputes this, (Doc. 53-3, pp. 12-13, 30). Stallworth eventually resumed her drive on I-65, and as she drove away from the gas station,

---

[2] Hurst does not claim to have observed Stallworth napping in her car while her engine was running.

Hurst noticed that her car had a dealership drive-off tag rather than a government-issued license plate. (*Id*., p. 13.)

Soon after, Hurst, too, entered I-65 northbound, though according to Hurst, he was not following Stallworth. (*Id.*) However, while on the interstate, Hurst began paying special attention to Stallworth's car as it fluctuated in speeds from as low as around 40 mph, as Stallworth herself admits, (Doc. 53-2, p. 16), to as high as around 85 mph, and swerved within its lane, (Doc. 53-3, pp. 14-15). For her part, Stallworth disputes that she ever accelerated over the speed limit; however, she admits that she tried to play a CD and struggled with the car's audio control buttons. (Doc. 53-2, p. 16.) Regardless, Hurst began driving behind her, at which point he observed Stallworth's car swerve over the dividing line multiple times and change lanes without signaling. (Doc 53-3, p. 15.) Based on Stallworth's erratic driving, Hurst determined it appropriate to conduct a traffic stop. (Doc. 53-3, pp. 15-16.)

### A.   Investigatory Stop

Hurst directed Stallworth to pull over at an off-ramp by activating his emergency lights and, once stopped, began recording the encounter on his eyeglass camera.[3] (Doc. 53-1; Doc. 53-3, pp. 29-30.) He approached the driver side of

---

[3] Defendant Hurst furnished this video evidence to benefit the Court in its summary judgment determination. (*See* Doc. 53-1.) In his reply brief, (Doc. 60, pp. 3-4), Hurst cites the Supreme Court's decision in *Scott v. Harris* to support his argument that, where a movant's video evidence otherwise contradicts the non-movant's version of the facts, the Court should view the facts in the light depicted by the video rather

Stallworth's car, shined a flashlight into the car, and questioned Stallworth, asking whether she was "alright" or "a little sleepy."[4] (Doc. 53-1.) In the video, Stallworth can be seen rubbing her legs before slowly responding that she was "just a little tired." (*Id.*) Hurst then asked whether Stallworth had been taking a nap at the gas station, and Stallworth, who appears lethargic on video, sluggishly confirmed that she had indeed been napping while parked at the gas station. (*Id.*) Before returning to his vehicle, Hurst asked Stallworth for her license, and she complied. (*Id.*)

---

than in the light most favorable to the non-movant. 550 U.S. 372, 380-81 (2007). The Court adopts this position and accordingly presents the facts in the light depicted by the video where such evidence is available. *See Murphy v. Demings*, 626 F. App'x 836, 838 n. 3 (11th Cir. 2015) ("Because Plaintiff's version of the facts is 'blatantly contradicted' by video evidence (the accuracy of which is unchallenged), we do not adopt Plaintiff's version of this fact as true."). But importantly, the Court notes that the video fails to capture the encounter between Hurst and Stallworth in its entirety and does not include the completion of the field sobriety tests and the arrest itself. (Doc. 53-1.) Where video evidence is not provided and there remains a genuine dispute as to those facts, the Court views the facts in a light most favorable to Stallworth. *See Scott*, 550 U.S. at 381; *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (requiring courts to review all evidence and make all reasonable inferences in favor of the party opposing summary judgment).

[4] As Stallworth characterizes this particular interaction, Hurst's first words to her were "I smell marijuana," to which she responded, "I've never done drugs a day in my life." (Doc. 53-2, pp. 16-17.) Yet this exchange is not reflected in the video. Stallworth also accuses Hurst of saying, "I smell alcohol", to which she contends that she responded by saying she had "never had alcohol a day in [her] life." (*Id.*, p. 17.) But this testimony too is not reflected in the video of Hurst and Stallworth's initial interaction.

While Hurst ran Stallworth's license, Stallworth reshuffled the belongings in her backseat. According to Stallworth, she simply straightened up the interior of the car "to look nice." (Doc. 53-2, p. 17.) But Hurst noticed that items had been rearranged, and upon returning to the driver's side of Stallworth's car, he immediately called for backup, citing a possible intoxicated driver. (Doc. 53-1; Doc. 53-3, p. 17.) Again, Hurst approached Stallworth's window and asked, "Have you have anything to drink at all tonight?" to which Stallworth replied in the negative. (Doc. 53-1.)  Hurst also asked about a boot and jacket that had been moved from the backseat and an open bottle on the floorboard that Stallworth insisted contained tea. (Doc. 53-1; Doc. 53-3, p. 33.) As Hurst explained to Stallworth at the time, "something [didn't] seem right," and he gave Stallworth the following reasons for the traffic stop:

> You didn't use a blinker a-ways back. Your speed has been going up and down for the last few miles. You rolled down the middle of the road at one point. And right now, your speech is kind of slurred. You're slow to react. I've never met you, so I'm just having to go by what I see, okay?

(Doc. 53-1.) All the while, Stallworth repeatedly asserted that she did not drink or do drugs and informed Hurst that she was a licensed attorney. (*Id.*)

Hurst then questioned Stallworth about the contents of her car, and specifically, whether it contained anything illegal. (*Id.*) Though she told him it did not, when he eventually requested her consent to search the car, she only replied,

"why?" (*Id*.) Hurst then referenced the displaced boot, to which Stallworth maintained that she was "just straightening up." (*Id*.) As Stallworth tried to reason, "There's nothing wrong with that." (*Id*.) Hurst then asked her to step out of the car in order to perform a set of field sobriety tests; Stallworth's only response, again, was "why?" (*Id*.)  City of Clanton Police Officer Matt Foshee arrived at the scene around this time and both officers then unsuccessfully attempted to convince Stallworth to submit to the field sobriety tests. Once out of Stallworth's earshot, Foshee noted to Hurst that Stallworth's eyes seemed "glossy" and her speech "slowed and slurred." (*Id*.)

### B.    Field Sobriety Tests

Stallworth eventually exited her car a few minutes later, at which point Hurst and Foshee administered several field sobriety tests ("FSTs"), including a horizontal gaze nystagmus test, the walk-and-turn test, a one-leg stand, and a drug recognition test ("DRE test"). (Doc. 53-2, pp. 17-18; Doc. 53-3, pp. 8, 19-20.) Stallworth additionally recounts that the officers administered a fifth test - the ABC test – though Hurst did not discuss it in his deposition or brief. (Doc. 53-2, p. 17.) Each of these tests, as explained in the expert report of Shane D. Healey, (Doc. 53-12, p. 12), has been recognized in numerous courts as the standard to establish whether an individual is impaired.

As Hurst administered the horizontal gaze nystagmus test,[5] Hurst noted that Stallworth appeared paranoid, confused, distracted, and slow to react. (Doc. 53-3, pp. 18-19.) He also concluded that she "lacked smooth tracking." (Doc. 53-3, p. 20.) Foshee agreed with this assessment. (Doc. 53-4, p. 15.) According to Stallworth, she was "concerned and felt threatened for her life" while Hurst administered this test.[6] (Doc. 53-2, p. 18.)

The parties' accounts of the other three FSTs[7] – none of which Hurst or any other officer captured on video – differ slightly but not substantially. As Hurst administered the one-leg stand test, both he and Foshee observed that Stallworth had difficulty keeping her balance. (Doc. 53-3, p. 20; Doc. 53-4, p. 9.) And as she completed the walk-and-turn test, Hurst testified that Stallworth's heels and toes did not meet. (Doc. 53-3, p. 20.) According to Stallworth, her poor balance was traceable to a fall she had suffered at work. (Doc. 53-2, pp. 17-18.)

The DRE test requires a person to put her arms straight out, tilt her head back, close her eyes, count to thirty, and once she has finished counting, to notify the test

---

[5] Stallworth mistakenly recounts that the horizontal gaze nystagmus test was administered last– a statement that is controverted by video evidence. (*See* Doc. 53-2, p. 18.)

[6] Notably, the battery in Hurst's eyeglass camera died while he was administering this test, so there is no video depicting the rest of the encounter. (Doc. 53-3, p. 19.)

[7] According to Stallworth, Hurst assured her more than once before administering an FST that "after this test, I'm going to let you go." (Doc. 53-2, p. 18.)

administrator. (Doc. 53-3, p. 20.) According to Officer Hurst's testimony, Stallworth reported that she had completed tasks, including counting to thirty, after only ten seconds. (*Id*.)

### C.    Arrest for Driving Under the Influence

Based upon Hurst's observations of Stallworth's erratic driving behavior and mannerisms over the course of the investigatory stop, and performance on the field sobriety tests, Hurst determined that probable cause existed to arrest Stallworth for driving under the influence. (*See* Doc. 53-3, pp. 8-9; Doc. 53-10; Doc. 53-13.)  He additionally issued her a traffic citation for failure to signal in violation of Ala. Code § 32-5A-134. (*See* Doc. 53-13.) According to Hurst, before handcuffing her, he asked Stallworth whether she had anyone who could pick her up from the scene or if she would voluntarily go to the hospital for further examination, but she declined both options.  (Doc. 53-3, p. 20.) Stallworth disputes that she was given any option to avoid arrest. (Doc. 53-2, p. 20.)

Hurst then handcuffed Stallworth, who testified that she believed consenting to a search of her car at this point would keep the officers from arresting her. (*Id*., p. 18.) In her words, she told them to "go ahead and search my car, then … if that's what it's going to take, because I don't do drugs, I don't do alcohol. Just search my car." (*Id*.) Hurst seated Stallworth in the back of his vehicle and proceeded with the search, finding only an energy drink, a bottle of tea, and a FedEx uniform shirt. (Doc.

53-3, p. 33.) He then proceeded with the arrest and transported Stallworth to the Chilton County jail. (*Id.*, pp. 21-22.) At the jail, Stallworth was administered a Drager Alcotest, which proved negative for alcohol. (Doc. 59-2.) She was then placed in a holding cell[8] until she was released the following morning. (Doc. 53-2, p. 19; Doc. 53-8.)

On December 6, 2016, Hurst formally charged Stallworth with driving under the influence in violation of Ala. Code § 32-5A-191(a)(5).

### D.    Voluntary Dismissal of Stallworth's Case

Stallworth was prosecuted by the Chilton County District Attorney. (Doc. 59-3.) However, shortly before the trial commenced, Hurst recommended dismissal of the case to the District Attorney on the condition that Stallworth submit to and pass a drug test. (Doc. 53-2, p. 20; Doc. 53-3, p. 28.) Stallworth agreed, and subsequently passed the drug test. (Doc. 53-2, p. 21.) The charges against Stallworth were voluntarily dismissed with prejudice on March 16, 2017. (Doc. 59-4.)  Stallworth commenced this lawsuit nearly two years later.

## II.    STANDARD OF REVIEW

---

[8] Stallworth brings no claims relating to the conditions of her incarceration in the Chilton County jail. (Doc. 53-2, pp. 19-20.)  Accordingly, what transpired as it concerns Stallworth's booking and treatment at the jail is largely irrelevant for summary judgment purposes.  Accordingly, Hurst's Motion for Leave to Supplement The Evidentiary Record (Doc. 61) is due to be denied.

Summary judgment is proper "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id*. at 324.

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B). Thus, in opposing summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. But if the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.   ANALYSIS

In Stallworth's Complaint, as amended, she asserts claims of False Arrest and Imprisonment (Count I) and Malicious Prosecution (Count II) against Hurst under 42 U.S.C. § 1983. (*See* Doc. 27.) As to both claims, Hurst argues that he is entitled to qualified immunity because he had at least arguable reasonable suspicion to conduct the investigative stop, arguable probable cause to conduct the traffic stop, and arguable probable cause to arrest. Of course, Stallworth challenges Hurst on each of these contentions, arguing in large part that Hurst's conduct was underpinned by racial animus rather than reasonable suspicion or probable cause.

### A.   General Principles

Section 1983 creates a civil cause of action for any person deprived of any rights, privileges, or immunities secured by the Constitution and laws, by another

person acting under the color of state law. 42 U.S.C. § 1983. Notably, the statute "does not in itself create federal rights, but rather provides a vehicle for asserting those rights." *Sprauer v. Town of Jupiter*, 331 F. App'x 650, 652 (11th Cir. 2009).

Liability under Section 1983, however, is not absolute. "Qualified immunity protects law enforcement officials from § 1983 suits for civil damages arising from the discharge of their discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citation and quotation omitted). The intent of the doctrine is "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (citation and quotation omitted).

In order to receive qualified immunity, an officer must first show that he acted within his discretionary authority. *See Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015). To do so, an officer must show that he was "(a) performing a legitimate job-related function … (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, it is undisputed that Hurst has satisfied this showing, and accordingly, the burden shifts to Stallworth to challenge Hurst's claim to qualified

immunity by showing both "(1) that there was a violation of the Constitution and (2) that the illegality of [the officer's] actions was clearly established at the time of the incident." *Hoyt*, 672 F.3d at 977.

To that end, the Court ultimately must address the following key question: When arresting Stallworth, and subsequently initiating a criminal prosecution against her, did Hurst act with (1) actual probable cause, (2) arguable probable cause, or (3) neither?

If Hurst acted with actual probable cause, then he did not violate Stallworth's Fourth Amendment rights. *See Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) ("the existence of probable cause at the time of an arrest … constitutes an absolute bar to a section 1983 action for false arrest") (citations omitted); *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) (recognizing the existence of probable cause will defeat a section 1983 claim for malicious prosecution), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147, 1162–65 (11th Cir. 2020). Even if he had only arguable probable cause, qualified immunity similarly shields Hurst from liability. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (noting an officer need only have had arguable probable cause to receive qualified immunity protection) (citing *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).

On the other hand, if neither probable cause nor arguable probable cause existed, then Stallworth's claims concerning her arrest will survive summary

judgment. The Court thus proceeds to examine Stallworth's claims under that rubric, after first determining whether Hurst had reasonable suspicion or probable cause to conduct the stop.

B.      False Arrest and Imprisonment

Stallworth first alleges that she suffered a false arrest and imprisonment[9] in violation of the Fourth and Fourteenth Amendments (Count I). "Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures,' … [and in] Fourth Amendment terminology, an arrest is a seizure of the person." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007). As is pertinent here, the Fourth Amendment's protections "extend to brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Naturally the parties disagree about whether Hurst had actual or arguable reasonable suspicion to conduct the initial stop and whether he thereafter developed the actual or arguable probable cause to arrest Stallworth, and the Court accordingly addresses the same.

i.      *Investigatory Stop*

---

[9] False imprisonment is derivative of a false arrest. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) ("Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest.") (citation omitted). Here, Stallworth's false imprisonment claim is predicated on her false arrest claim, (Doc 27, pp. 13-14), and the Court thus analyzes them simultaneously.

As to the initial investigatory traffic stop, an officer can "lawfully detain an individual without a warrant if (1) there is probable cause to believe that a traffic violation has occurred (a traffic stop), or (2) there is reasonable suspicion to believe the individual has engaged or is about to engage in criminal activity (an investigative or *Terry* stop)." *United States v. Gibbs*, 917 F.3d 1289, 1294 (11th Cir. 2019) (citing *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)). In *Gibbs*, the Eleventh Circuit explained that while a traffic stop and a *Terry* stop have obvious differences, "the Supreme Court has recognized that the two are 'analogous' both in their 'duration and atmosphere.'" 917 F.3d at 1294 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 n.29 (1984)).

Reasonable suspicion, while a less demanding standard than probable cause, nevertheless "requires at least a minimal level of objective justification for making the stop." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) (citation and quotation omitted). The presence of such "articulable suspicion that criminal activity is afoot" gives an officer license to "conduct a brief, investigatory stop," *id*., so long as that stop and the officer's inquiry are "reasonably related in scope to the justification for their initiation," *Terry v. Ohio*, 392 U.S. 1, 29 (1968). And in the context of qualified immunity, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson*, 206 F.3d at 1166. The Court thus considers the

question objectively "from the standpoint of a reasonable official at the scene." *Young v. Brady*, 793 F. App'x 905, 909 (11th Cir. 2019) (citing *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005)).

In this case, Hurst had more than enough objective reasonable suspicion to stop Stallworth. Hurst notes various traffic violations Stallworth committed including Stallworth's failure to display a valid license tag on her car in violation of Ala. Code §§ 32-6-51 and 40-12-242 and her failure to signal before changing lanes in violation of Ala. Code § 32-5A-134. (Doc. 55, pp. 21-22.) *See Reid v. Henry Cty., Ga.*, 568 F. App'x 745, 748 (11th Cir. 2014) (finding lane changes without the use of a signal provided reasonable articulable suspicion to make an investigatory stop); *United States v. Rosian*, 822 F. App'x 964, 967 (11th Cir. 2020) (concluding that officers lawfully stopped defendant for a traffic violation of failing to have a plainly visible license plate); *United States v. DeJesus*, 435 F. App'x 895, 899 (11th Cir. 2011) (license plate). Notably, Stallworth is silent as to whether she changed lanes without using a signal, and thus fails to create a genuine dispute for the Court to resolve. All told, Hurst executed the stop with the requisite arguable reasonable suspicion.

Further, Stallworth's slow driving and erratic speeds, in combination with the failure to signal a lane change, which she attributed to her focus on the car's audio controls, (*see* Doc. 53-2, p. 16), would have provided arguable reasonable suspicion

that Stallworth was guilty of driving under the influence. While true that playing music is "seemingly innocent" and generally does not constitute criminal conduct, the absence of criminal conduct alone does not defeat reasonable suspicion. *See United States v. Byron*, 817 F. App'x 753, 757 (11th Cir. 2020) ("Reasonable suspicion may exist even if each fact alone is susceptible of innocent explanation.") (citing *United States v. Bautista-Silva*, 567 F.3d 1266, 1272 (11th Cir. 2009)). Instead, the "arguable reasonable suspicion" standard allows officers to rely on their own inferences and deductions, and from Hurst's vantage point, Stallworth was driving at inconsistent speeds and with shifting attention. He would have had no way of knowing that Stallworth was distracted rather than inebriated, and moreover, his training and experience indicated that Stallworth's poor driving was due to intoxication. (*See* Doc. 53-10.) *See Jenkins v. Gaither*, 543 F. App'x 894, 897 (11th Cir. 2013) (finding report that plaintiff was "driving at an unusual speed" and "weaving across the road" was sufficient to provide reasonable suspicion); *United States v. Franklin*, No. 2:17-CR-13, 2017 WL 3393084, at *4 (S.D. Ga. July 11, 2017), *r. & r. adopted*, No. 2:17-CR-13, 2017 WL 3392746 (S.D. Ga. Aug. 7, 2017) (holding the combination of plaintiff's driving at an unusual hour and an unusually slow rate of speed while weaving was sufficient to support officer's reasonable suspicion that plaintiff was driving under the influence); *see also United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989) (the reasonable suspicion standard

requires an officer to "provide some minimal, objective justification for the stop....
Such facts may be derived from various objective observations ... and consideration
of the modes or patterns of operation of certain kinds of lawbreakers.").

For her part, Stallworth does little to counter Hurst's contentions as they relate
to the legality of the traffic stop. In her brief, she goes no further than simply assert
that it would be a "reasonable inference" that Hurst decided Stallworth was driving
under the influence as early as when he observed her in the Texaco parking lot, (Doc.
59, p. 24), and thus insinuating that the stop was pretextual. Notably, Stallworth
offers nothing to demonstrate that Hurst lacked reasonable suspicion, whether actual
or arguable. Nor does she offer any direct or circumstantial evidence of pretext. But
in any case, Hurst's "subjective motivations" for conducting the stop have no
bearing on the court's objective inquiry into the reasonableness of the stop. *E.g.,*
*Byron*, 817 F. App'x at 757. The circumstances described, viewed in their totality
and in a light most favorable to Stallworth, support a particularized and objective
basis to suspect that Stallworth had committed both traffic violations and was driving
under the influence.

Further, Hurst also would have had arguable probable cause to stop Stallworth
who, here again, was actively engaged in wrongdoing. Indeed, as Hurst notes and
Stallworth does not dispute, Stallworth was failing to display a valid license tag and
to maintain a reasonable and prudent speed. (*See* Doc. 53-3, p. 15.)  The existence

of such probable cause means that, even if considered a traffic stop, Hurst's decision to pull over Stallworth did not constitute a violation of her Fourth Amendment rights. And where an officer has probable cause to make a stop, he also has probable cause to make an arrest for the same offense. *See Holley v. Town of Camp Hill*, 351 F. Supp. 3d 1359, 1367 (M.D. Ala. 2018) (citing *Stephens v. DeGiovanni*, 852 F.3d 1298, 1320 n.21 (11th Cir. 2017) ("A custodial arrest may be made for misdemeanor offenses and traffic violations.")). But in any case, Stallworth does not argue that the stop was a traffic stop, as opposed to a *Terry* stop, and there is no need to discuss it with any more specificity. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"). To the extent that Stallworth seeks to support a claim for false arrest and imprisonment on the initial investigatory traffic stop, her claim is unavailing.

ii.     *The Arrest*

Where the arrest itself is challenged, the "reasonableness" requirement hinges on "the presence or absence of probable cause for the arrest." *Skop*, 485 F.3d at 1137. Eleventh Circuit precedent is clear – "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Case*, 555 F.3d at 1326. However, as noted above, the converse is also true – "[t]he existence of probable cause at the time of arrest … constitutes an absolute bar to a section 1983

action for false arrest." *Id*. at 1326-27 (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), *abrogated on other grounds by Aguirre*, 965 F.3d 1147).

Importantly, probable cause to arrest exists when an arrest is "objectively reasonable based on the totality of the circumstances." *Lee*, 284 F.3d at 1195. "This standard is met when the facts and circumstances within the officer's knowledge … would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)). A probable cause determination should be based upon the elements of the alleged crime and the objective facts available to the officer at the time of arrest. *See Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003). Moreover, such a determination "'does not require convincing proof' and 'need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction.'" *Id.* (quoting *Lee*, 284 F.3d at 1195).

Further, and crucial as to the case at bar, an officer who lacks probable cause may nevertheless claim qualified immunity so long as he acted with *arguable* probable cause. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Durruthy,* 351 F.3d at 1089

(citing *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999) (citing in turn *Lindsey v. Storey*, 936 F.2d 554, 562 (11th Cir. 1991)). In contrast with "actual" probable cause, arguable probable cause "gives ample room for mistaken judgments… and reasonable error." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (citations omitted). Accordingly, the relevant inquiry is "whether the [officer's] conduct violated clearly established law and not whether an arrestee's conduct is a crime or ultimately will result in conviction." *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n. 8 (11th Cir. 2001).

Here, Hurst arrested Stallworth for driving under the influence in violation of Ala. Code § 32-5A-191(a)(5), which provides, in relevant part: "A person shall not drive or be in actual physical control of any vehicle while… [u]nder the influence of any substance which impairs the mental or physical faculties of such person to a degree which renders him or her incapable of safely driving."[10] (*See* Doc. 53-10.)

Taken in the light depicted by video footage, and otherwise in a light most favorable to Stallworth, the summary judgment record shows that Hurst possessed the following information at the time he placed Stallworth under arrest shortly after midnight on December 5, 2016: Hurst had observed Stallworth drive at inconsistent

---

[10] As Hurst points out, "any substance" in the context of the statute refers to any substance that may affect a driver's ability to safely operate a vehicle. *See Sturgeon v. City of Vestavia Hills*, 599 So. 2d 92, 93 (Ala. Crim. App. 1992) (concluding that (a)(5) of the statute encompasses substances other than alcohol or controlled substances that impair a person's mental or physical faculties).

and erratic speeds late at night, and as she began to weave within her own lane and eventually into the adjacent lane, his focus on her narrowed. When she changed lanes without a signal, Hurst pulled Stallworth over. Hurst approached her car window and began interacting with Stallworth, at which point he observed Stallworth's reduced faculties including drowsiness and impaired coordination and speech, points that Stallworth does not really dispute. As she has admitted, she was "just a little tired."

Then, as Hurst was running Stallworth's license, Stallworth moved belongings in her vehicle around, including items that were contained on the floorboard of her back seat. Again, Stallworth gave an innocent explanation; she was "just straightening up." But Hurst's suspicions were piqued, and when Officer Foshee arrived several minutes later, he pointed out to Hurst that Stallworth's eyes seemed "glossy" and her speech sounded "slowed and slurred."

When Stallworth did submit to a sequence of field sobriety tests, she did little to instill confidence that she was not under the influence of any substance. She had difficulty following Hurst's basic instruction for the horizontal gaze nystagmus test and appeared distracted, continually looking over her shoulder rather than giving her attention to Hurst. She also had difficulty finding her balance while completing the other tests, though she once again offered an innocent explanation – a fall at work. Based on this information, Hurst arrested Stallworth for driving under the influence.

For her part, Stallworth does not dispute that she was slow to respond, slurring her words, or unsteady on her feet. In short, Hurst readily "could have believed that probable cause existed to arrest" Stallworth. *Lee,* 284 F.3d at 1195. And significantly, at no point during the video do the parties discuss race, nor does either party recount a discussion of race in any record evidence before the Court.

Stallworth's claims that she had neither consumed alcohol nor smoked marijuana on the night in question do merit some discussion. Indeed, at the Chilton County jail, staff administered a Drager Alcotest which indicated that Stallworth did not have alcohol in her system. (Doc. 59-2.)  In her brief, Stallworth also questions why Hurst would not have taken any further steps to confirm that she was, in fact, under the influence of any substance before arresting her.

But Stallworth's culpability as it concerns the crime of driving under the influence is not at issue, and her innocent explanations for her observed, and generally uncontested, behavior only serve to strengthen Hurst's entitlement to qualified immunity. The legal standard requires an objective inquiry into the defendant officer's actions based on the totality of evidence known to him at the time he made the arrest. As Hurst explained, he believed something was "not right", and based on the testimony provided, including that of which Stallworth acknowledges, the Court cannot now find a reason to second guess Hurst's on-scene assessment of Stallworth.

In viewing the video footage in particular, the Court is inclined to find that Hurst was neither acting unreasonably nor reaching far-flung conclusions in believing that something was inhibiting Stallworth's ability to safely operate a car. But in any case, "[t]he protection of qualified immunity applies regardless of whether the [officer's] error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507 (1978) (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (approvingly quoting the same).

The Court now answers the question it posed earlier in this opinion and finds that Hurst possessed reasonable suspicion in instigating the stop and arguable probable cause when arresting Stallworth. Hurst is thus entitled to qualified immunity and his motion for summary judgment as to Stallworth's false arrest and imprisonment claim is due to be granted.

C.   Malicious Prosecution

Malicious prosecution, which is the basis of Stallworth's second claim (Count II), is also "a violation of the Fourth Amendment and [a] viable constitutional tort

under § 1983."[11] *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). To establish a federal claim for malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, (2) an unlawful seizure in violation of the Fourth Amendment, and (3) that the unlawful seizure related to the prosecution. *Kingsland,* 382 F.3d at 1234–35.

Stallworth claims that Hurst maliciously prosecuted her for driving under the influence and for refusing to dismiss the criminal case until after Stallworth had retained legal counsel and suffered mental stress attributable to her pending criminal case. However, "the plaintiff's arrest cannot serve as the predicate deprivation of liberty." *Kingsland*, 382 F.3d at 1235. Instead, for the unlawful seizure to relate to the prosecution, the deprivation of liberty suffered by a plaintiff must have occurred after his or her arraignment. *Id*. This requirement proves to be an insurmountable hurdle for Stallworth, who has failed to point to any deprivation of liberty, other than her arrest, as the basis for her malicious prosecution claim. *See Donley v. City of Morrow, Georgia*, 601 F. App'x 805, 814 (11th Cir. 2015) ("warrantless arrest

---

[11] The difference between a malicious prosecution claim and a false arrest claim is that to be entitled to qualified immunity from a malicious prosecution claim, the officer must show that he had arguable probable cause for each crime charged. *See Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir. 1998) (holding that conviction on some charges in the indictment did not preclude plaintiff's malicious prosecution claim based on other charges that were dismissed). The rationale is that, unlike an arrest, "once an individual is prosecuted, each additional charge imposes additional costs and burdens." *Elmore v. Fulton Cty. School District*, 605 F. App'x 906, 915 (11th Cir. 2015).

cannot serve as the requisite Fourth Amendment seizure for purposes of his § 1983 malicious prosecution claim") (citing *Kingsland*, 382 F.3d at 1235). "[E]ven assuming [she] could meet the first two elements of a malicious prosecution-like Fourth Amendment claim, [her] failure to produce evidence on the third element dooms [her] chances for success." *Exford v. City of Montgomery,* 887 F. Supp. 2d 1210, 1226 (M.D. Ala. 2012).

Accordingly, Stallworth cannot maintain a claim for malicious prosecution and summary judgment is due to be granted in Hurst's favor.

## IV.    CONCLUSION

For the reasons set forth above, the Court concludes that Defendant Rodney Hurst is entitled to qualified immunity. Accordingly, it is

ORDERED that Defendant Hurst's Motion for Summary Judgment, (Doc. 54), be and is hereby **GRANTED**. The claims against Defendant Hurst in his individual capacity are dismissed with prejudice. Furthermore, Defendant Hurst's Motion for Leave to Supplement the Evidentiary Record (Doc. 61) is due to be and hereby is **DENIED**.

A separate judgment will issue.

DONE and ORDERED, this 5th day of February, 2021.

_____ /s/ R. Austin Huffaker, Jr. _____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE